**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re:

LAURELS OF FALLSBURG LLC,

Alleged Debtor.

Chapter 11 (Involuntary)

Case No. 25-35887 (KYP)

---------------------------------------------------------------x

In re:

651 LAKES LLC,

Alleged Debtor.

Chapter 7 (Involuntary)

Case No. 25-35891 (KYP)

---------------------------------------------------------------x

In re:

MAGICSOFT GROUP INC.,

Alleged Debtor.

Chapter 7 (Involuntary)

Case No. 25-35888 (KYP)

---------------------------------------------------------------x

ARON BERLIN, *et al.*,

Plaintiffs,

-against-

JENNIFER SAFKEN, *et al.*,

Defendants.

Adv. Pro. No. 25-09019 (KYP)

---------------------------------------------------------------x

**MEMORANDUM DECISION DISMISSING BAD FAITH INVOLUNTARY BANKRUPTCY CASES AND ENJOINING PETITIONING CREDITORS ISRAEL FARKASH AND AHRON BERLIN FROM FILING ANOTHER INVOLUNTARY BANKRUPTCY PETITION FOR FIVE YEARS**

**APPEARANCES:**

ISRAEL MEIR FARKASH
*Pro Se Petitioning Creditor*
9 Ramsey Terrace
Fair Lawn, NJ 07410

AHRON BERLIN
*Pro Se Petitioning Creditor*
1909 New York Avenue
Brooklyn, NY 11210

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2
Leo O'Brien Federal Building
11A Clinton Avenue, Room 620
Albany, NY 12207
By: Alicia M. Leonard, Esq.
Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

In 2001, this Court sanctioned parties in two involuntary bankruptcy cases in an effort to curb a disturbing trend of "patently baseless and improper involuntary filings" in the Southern and Eastern Districts of New York. *In re Grossinger*, 268 B.R. 386, 387 (Bankr. S.D.N.Y. 2001); *see also In re Stern*, 268 B.R. 390 (Bankr. S.D.N.Y. 2001). The late Judge Adlai S. Hardin, Jr., who penned both decisions, observed:

> The potential for collusive filings exists where a "friendly" creditor files an involuntary petition with no intention of serving the debtor or seeking an order for relief but with the intent of frustrating the rights of a secured creditor or any other creditor whose state court remedies are stayed until the case is closed.

*Grossinger*, 268 B.R. at 387.

This Court is once again compelled to issue sanctions to curb a renewed trend of meritless involuntary filings with circumstances strikingly similar to those described by Judge Hardin twenty-five years ago. Two of the main perpetrators of the current trend are petitioning creditors (i) Israel Farkash a/k/a Israel Meir Farkash ("Farkash"), and (ii) Ahron Berlin, a/k/a "Aron" Berlin, a/k/a "Aharon" Berlin, a/k/a "Aaron" Berlin,

a/k/a "Ahraon" Berlin ("Berlin"). In just the past few years, Farkash and Berlin have been involved in no fewer than nineteen separate involuntary cases across this Court, the U.S. Bankruptcy Court for the Eastern District of New York ("EDNY Bankruptcy Court"), and the U.S. Bankruptcy Court for the District of New Jersey ("NJ Bankruptcy Court"). Most of these cases served no bankruptcy purpose and have been dismissed.

Before the Court is a motion ("Motion")[1] by the United States Trustee for Region 2 ("U.S. Trustee") to sanction Farkash and Berlin. The Motion was made in the following three cases, which have remained open for the primary purpose of considering the imposition of sanctions against Farkash and Berlin: (i) *In re Laurels of Fallsburg LLC*, Case No. 25-35887 (KYP) ("Laurels of Fallsburg Case"); (ii) *In re 651 Lakes LLC*, Case No. 25-35891 (KYP) ("651 Lakes Case"); and (iii) *In re MagicSoft Group, Inc.*, Case No. 25-35888 (KYP) ("MagicSoft Case").

For the reasons stated, (i) the Motion is GRANTED as set forth herein; (ii) the Laurels of Fallsburg Case, 651 Lakes Case, and MagicSoft Case are DISMISSED as bad faith filings; and (iii) Farkash and Berlin are each ENJOINED from filing another involuntary bankruptcy petition in any District in the United States for a period of five years.

## BACKGROUND[2]

### A. Farkash's and Berlin's Involuntary Bankruptcy Cases

---

[1] *See Memorandum of Law in Support of the United States Trustee's Motion for an Order Imposing Sanctions on Petitioning Creditors Israel Farkash and Aron Berlin*, dated Jan. 14, 2026 (ECF Laurels of Fallsburg Case Doc. # 17-1). This decision references multiple case dockets, and citation to the dockets will be denoted as "ECF [insert case name or number] Doc. # _." "ECF p. _" refers to the page number imprinted across the top of the page by the Court's electronic filing system.

[2] This section includes references to judicial documents and court records filed on dockets of other cases. The Court may take judicial notice of such documents and records. *In re Mirena IUD Prods. Liab. Litig.*, 29 F. Supp. 3d 345, 350 (S.D.N.Y. 2014); *see* FED. R. EVID. 201.

Farkash and Berlin are serial filers of involuntary bankruptcy petitions and have been involved in no fewer than nineteen involuntary bankruptcy cases in this Court, the EDNY Bankruptcy Court, and the NJ Bankruptcy Court as follows:

| **SDNY CASES** | | | | |
|---|---|---|---|---|
| | **Case Name / Number** | **Petitioning Creditor(s)** | **Date Filed** | **Disposition** |
| 1 | *Aaron Fischman*, Case No. 23-35368 (CGM) ("Fischman Case") | Ahron Berlin | 5/8/2023 | Dismissed on 7/11/2023 for lack of prosecution |
| 2 | *Rachel Brown*, Case No. 24-35956 (KYP) ("Brown Case") | Israel Farkash | 9/23/2024 | Dismissed on 5/27/2026; granted debtor's motion to dismiss |
| 3 | *Menachem Blum*, Case No. 24-35957 (KYP) ("Blum Case") | Israel Farkash | 9/23/2024 | Dismissed on 3/6/2025 for lack of prosecution |
| 4 | *Chaim Toisig*, Case No. 24-35966 (KYP) ("Toisig Case") | Ahron Berlin | 9/26/2024 | Dismissed on 1/7/2026; granted U.S. Trustee's motion to dismiss |
| 5 | *Photo Electronics and More*, Case No. 24-22899 (SHL) ("Photo Elec. Case") | Miriam Kohn[3] | 10/18/2024 | Dismissed on 8/7/2025 for lack of prosecution |
| 6 | *PBC Investments Group LLC*, Case No. 25-22160 (SHL) ("PBC I Case") | Israel Farkash | 2/28/2025 | Dismissed on 4/15/2025 for failure to pay filing fee |
| 7 | *WPB Holdings Group LLC*, Case No. 25-22197 (SHL) ("WPB Holdings Case") | "Ahraon" Berlin | 3/10/2025 | Dismissed on 5/19/2025 for failure to pay filing fee |
| 8 | *PBC Investments Group LLC*, Case No. 25-22357 (SHL) ("PBC II Case") | Israel Farkash | 4/25/2025 | Dismissed on 6/26/2025 for failure to pay filing fee |
| 9 | *Laurels of Fallsburg LLC*, Case No. 25-35887 (KYP) (i.e., Laurels of Fallsburg Case) | Israel Meir Farkash | 8/17/2025 | Remains open pending disposition of instant sanctions Motion |
| 10 | *651 Lakes LLC*, Case No. 25-35891 (KYP) (i.e., 651 Lakes Case) | Israel Meir Farkash | 8/17/2025 | Remains open pending disposition of instant sanctions Motion |
| 11 | *MagicSoft Group Inc.*, Case No. 25-35888 (KYP) (i.e., MagicSoft Case) | "Aron" Berlin | 8/17/2025 | Remains open pending disposition of instant sanctions Motion |
| 12 | *Haim S. Segal*, Case No. 25-23044 (SHL) ("Segal Case") | Israel Meir Farkash | 10/30/2025 | Dismissed on 6/5/2026; Farkash agreed to dismissal at an order to show cause hearing |

[3] On April 29, 2025, "Aharon" Berlin and Farkash represented to the Court that Ms. Kohn assigned her claim to them and asked for an adjournment of an imminent dismissal hearing. (ECF Photo Elec. Case Doc. # 20.) Berlin and Farkash then failed to appear at subsequent hearings, and the Court dismissed the case on August 7, 2025. (ECF Photo Elec. Case Doc. # 22.)

| EDNY CASES | | | | |
|---|---|---|---|---|
| | **Case Name / Number** | **Petitioning Creditor(s)** | **Date Filed** | **Disposition** |
| 1 | *Menachem Mendel Schneorson*, Case No. 22-40433 (JMM) ("Schneorson Case") | "Aaron" Berlin<br>Barry Kay<br>Mark Elnatan | 3/6/2022 | Court approved Chapter 7 trustee's final report on 8/20/2025; no bankruptcy discharge entered |
| 2 | *Moshe Gold*, Case No. 24-43647 (NHL) ("Gold Case") | Yoel Abraham[4] | 9/4/2024 | Dismissed on 1/23/2025; granted putative debtor's motion to dismiss |
| 3 | *10 Mountainview LLC*, Case No. 24-43681 (NHL) ("10 Mountainview Case") | Yoel Abraham[5] | 9/5/2024 | Dismissed on 11/26/2024; granted putative debtor's motion to dismiss |
| 4 | *Samuel Levin*, Case No. 24-44098 (ESS) ("Levin Case") | "Aharon" Berlin[6] | 10/1/2024 | Dismissed on 1/7/2025 for lack of prosecution |

| NJ CASES | | | | |
|---|---|---|---|---|
| | **Case Name / Number** | **Petitioning Creditor(s)** | **Date Filed** | **Disposition** |
| 1 | *Samuel Gratt*, Case No. 23-11394 (KCF) ("Gratt I Case") | Israel Farkash<br>Avraham Blau<br>Yocheved Blau | 2/22/2023 | Dismissed for lack of prosecution on 4/18/23 |
| 2 | *287 New Brunswick Enterprises, LLC*, Case No. 23-15354 (CMG) ("287 New Brunswick Case") | Israel Meir Farkash | 6/21/2023 | Court entered order to show cause for lack of prosecution on 7/24/2023; putative debtor stipulated to entry of order of relief; Chapter 11 final decree entered on 3/16/2026 |
| 3 | *Samuel Gratt*, Case No. 24-11577 (MBK) ("Gratt II Case") | "Aharon" Berlin<br>Israel Farkash<br>Abraham Blau | 2/20/2024 | Court entered order to show cause for lack of prosecution on 3/25/2024; Chapter 11 order for relief entered on 7/18/2024; Chapter 11 trustee appointed on 8/5/2024; case converted to Chapter 7 on 9/12/2024; case dismissed on 11/21/2024 following Chapter 7 trustee's motion to dismiss |

[4] On November 19, 2024, Farkash represented to the EDNY Bankruptcy Court that Mr. Abraham's claim was assigned to him and another individual named Asher Blumenberg and asked for an adjournment of the putative debtor's pending motion to dismiss. (ECF Gold Case Doc. # 10.) The EDNY Bankruptcy Court dismissed the case on January 23, 2025. (ECF Gold Case Doc. # 20.)

[5] As in the Gold Case (*see supra* note 4), Farkash represented to the EDNY Bankruptcy Court that Mr. Abraham's claim was assigned to him and Asher Blumenberg and asked for an adjournment of the putative debtor's pending motion to dismiss. (ECF 10 Mountainview Case Doc. # 8.) The EDNY Bankruptcy Court dismissed the case on November 26, 2024. (ECF 10 Mountainview Case Doc. # 11.)

[6] Although Berlin was the petitioning creditor in the Levin Case, Farkash physically filed the involuntary petition at the intake window of the EDNY Bankruptcy Court. (ECF Levin Case Doc. # 1 at p. 6 (affirmation of filer signed by Farkash).)

As detailed *infra*, Farkash and Berlin have engaged in an abuse of the bankruptcy system through their actions in these involuntary cases.

**B. The Instant Involuntary Cases and the November 17 Hearing**

On August 17, 2025, Farkash, as sole petitioning creditor, commenced the Laurels of Fallsburg Case as well as the 651 Lakes Case. On the same day, Berlin, as sole petitioning creditor, commenced the MagicSoft Case. The filing fees to commence these cases were not paid at the time of filing, and the Clerk's Office scheduled dismissal hearings in each of the three cases on that basis. (ECF Laurels of Fallsburg Case Doc. # 3; ECF 651 Lakes Case Doc. # 3; ECF MagicSoft Case Doc. # 3.) On or around September 19, 2025, the filing fees were paid, and the dismissal hearings were canceled.

Neither Farkash nor Berlin filed an affidavit of service showing that the summons and involuntary petitions had been timely served in accordance with Federal Bankruptcy Rules 1010(a) and 7004(e). Thus, the Court entered orders in each of the cases to show cause why the cases should not be dismissed for lack of prosecution. (ECF Laurels of Fallsburg Case Doc. # 11; ECF 651 Lakes Case Doc. # 6; ECF MagicSoft Case Doc. # 7.)

A hearing on the orders to show cause went forward on November 17, 2025 ("November 17 Hearing").[7] Farkash and the attorney for the U.S. Trustee were present at the November 17 Hearing. Berlin was not present. The Court observed that Farkash and Berlin had filed numerous involuntary cases with the Court within the past two years and made the following observation:

---

7 A transcript of the November 17 Hearing is available at ECF MagicSoft Case Doc. # 14, and references to that transcript will be denoted as "11/17/25 Tr. at _:_."

> [THE COURT:] [T]he impression I get from reviewing these cases is that the petitioning creditor and the alleged debtor are working together to somehow get the automatic stay against other parties, which . . . in my view, would be a strange, if not irregular and improper, use of involuntary petitions.

(11/17/25 Tr. at 6:1-5.) The U.S. Trustee agreed and observed as follows:

> MS. LEONARD: . . . I agree completely with Your Honor's assessment of the situation, and not only have they filed numerous cases in the Southern District of New York, but my research shows they filed numerous cases in the Eastern District of New York. And they've also filed in the District of New Jersey the same kind of cases.
>
> . . .
>
> [T]hese cases are rarely prosecuted . . . and they're always dismissed either for failure to pay the filing fee or failure to prosecute. . . . [T]hese cases . . . in the U.S. Trustee's view are an abuse of the bankruptcy system, and the other issue, too, is there's always one petitioning creditor filing.

(*Id.* at 7:3-18.)

As a result of these observations, the Court recommended to the U.S. Trustee that the office review the activities of Farkash and Berlin. (*Id.* at 9:13-10:5.) On November 21, 2025, the Court entered a corresponding order, which directed the U.S. Trustee to make a submission regarding Farkash and Berlin by January 16, 2026. (ECF Laurels of Fallsburg Case Doc. # 22.)

## C. The Instant Motion

On January 14, 2026, the U.S. Trustee filed the instant Motion to sanction Farkash and Berlin for their abuse of the bankruptcy system through their involvement and activities in the nineteen involuntary bankruptcy cases. (*See* Motion.) A hearing on the Motion was scheduled for February 10, 2026 ("February 10 Hearing"). On the eve of the hearing, Farkash made an emergency request for an adjournment asserting that he

was not served with a copy of the Motion. (ECF Laurels of Fallsburg Case Doc. # 30.) The U.S. Trustee objected to Farkash's adjournment request citing the office's affirmation of service evidencing service to Farkash as well as precedent supporting the proposition that service is deemed complete upon mailing. (ECF Laurels of Fallsburg Case Doc. # 29.) At the February 10 Hearing, at which Farkash was present, the Court questioned Farkash's assertion that he was completely unaware of the Motion because he actively participated at the November 17 Hearing wherein the U.S. Trustee's forthcoming submission was discussed. Further, Farkash received a copy of the Court's November 21, 2025 order in which the U.S. Trustee was directed to make a submission regarding Farkash's activities by January 16, 2026. (ECF Laurels of Fallsburg Case Doc. # 23 (certificate of mailing of order to Farkash).)

Nonetheless, the Court, at the February 10 Hearing, granted Farkash's request in part by permitting him to file a response to the Motion. Pursuant to the *Order Resolving Israel Farkash's Request for Adjournment*, dated February 11, 2026 ("Scheduling Order") (ECF Laurels of Fallsburg Case Doc. # 32), (i) Farkash was permitted to file a response to the Motion by February 20, 2026, (ii) the U.S. Trustee was permitted to file a reply by February 27, 2026, and, (iii) following completion of briefing, the Court would take the Motion under advisement. (Scheduling Order at 2.) Farkash timely filed his opposition to the Motion on February 20 ("Farkash Objection")[8]

---

[8] *See Objection of Israel Meir Farkash, Appearing pro se, to the United States Trustee's Motion for Sanctions for Failure to Effect Actual Service Under Federal Rules of Bankruptcy Procedure 9014(b) and 7004*, dated Feb. 20, 2026 (ECF Laurels of Fallsburg Case Doc. # 35).

as well as a corresponding certification ("Farkash Certification").[9] The U.S. Trustee filed a timely reply on February 27 ("Reply").[10]

A few weeks after the completion of briefing on the Motion, Berlin filed a belated submission ("Berlin Submission")[11] asserting that he was unaware of any of these proceedings and that he was not the person who made the submissions in the MagicSoft Case or the MagicSoft Adversary Proceeding (defined *infra*). On March 17, 2026, the Court entered the *Order Regarding Ahron Berlin's Submission* (ECF MagicSoft Case Doc. # 25) stating that the Court would consider the Berlin Submission as part of its forthcoming ruling on the Motion.

## DISCUSSION

### A. Involuntary Petitions and Bad Faith

#### 1. Applicable Legal Standards

The vast majority of bankruptcy filings are initiated as voluntary petitions under 11 U.S.C. § 301. "Far fewer are initiated as involuntary petitions by creditors, much less a single creditor, under 11 U.S.C. § 303." *Wilk Auslander LLP v. Murray* (*In re Murray*), 900 F.3d 53, 59 (2d Cir. 2018). The Second Circuit explained the purpose of involuntary bankruptcy petitions as follows:

> [The ability to force a debtor into bankruptcy] exists as an avenue of relief for the benefit of the overall creditor body. It was not intended to redress the special grievances, no matter how legitimate, of particular creditors.

---

9 *See Certification of Israel Meir Farkash in Support of Objection to United States Trustee's Motion for Sanctions*, dated Feb. 20, 2026 (ECF Laurels of Fallsburg Case Doc. # 35-1).

10 *See Reply Memorandum in Support of the United States Trustee's Motion for an Order Imposing Sanctions on Petitioning Creditors Israel Farkash and Aron Berlin*, dated Feb. 27, 2026 ("Reply") (ECF Laurels of Fallsburg Case Doc. # 36).

11 *See Corrected Motion to Correct the Record, for Protective Relief, and Declaration of Ahron Berlin*, dated Mar. 16, 2026 (ECF MagicSoft Case Doc. # 24).

> Such creditors must seek redress under state law, in the state courts, and not in the bankruptcy court.

*Id.* at 59-60 (quoting *In re Brooklyn Res. Recovery, Inc.*, 216 B.R. 470, 486 (Bankr. E.D.N.Y. 1997)) (internal quotation marks and alterations omitted); *accord Murrin v. Hanson* (*In re Murrin*), 477 B.R. 99, 105 (D. Minn. 2012) ("Involuntary bankruptcy is intended to be exercised for the good of the entire creditor body.") (citation omitted).

Involuntary bankruptcy petitions must generally be filed by three or more petitioning creditors who hold noncontingent, unsecured claims in the aggregate amount of at least $21,050, which are not subject to bona fide dispute as to liability or amount. 11 U.S.C. § 303(b)(1). The requirement concerning the number of creditors is "based on strong policy considerations, which include the fear that one or two recalcitrant creditors might file an involuntary case to harass a debtor." 2 COLLIER ON BANKRUPTCY ¶ 303.14 (16th ed. 2026) ("COLLIER"). Fewer than three petitioning creditors may commence an involuntary bankruptcy case only when the putative debtor has fewer than 12 total creditors. 11 U.S.C. § 303(b)(2). Courts should closely scrutinize involuntary cases filed by a single petitioning creditor because they present greater opportunities for fraud and abuse. *See Murray*, 900 F.3d at 60 (observing that "courts tend to scrutinize" single-petitioner cases "closely").

The petitioning creditor's claim must not be "contingent as to liability." 11 U.S.C. § 303(b)(1). A claim is contingent as to liability if the debtor's obligation to pay does not arise until the happening of a future event, and that event was contemplated when the debtor/creditor relationship originated. *B.D. Int'l Disc. Corp. v. Chase Manhattan Bank, N.A.* (*In re B.D. Int'l Disc. Corp.*), 701 F.2d 1071, 1073 n.2 (2d Cir. 1983) (citation omitted). The claim must also not be "subject of a bona fide dispute as to liability or

amount." 11 U.S.C. § 303(b)(1). A claim is subject to a bona fide dispute if "there is either a genuine issue of material fact that bears upon the debtor's liability or a meritorious contention as to the application of law to undisputed facts." *Crest One Spa v. TPG Troy, LLC* (*In re TPG Troy, LLC*), 793 F.3d 228, 234 (2d Cir. 2015) (quoting *Key Mech. Inc. v. BDC 56 LLC* (*In re BDC 56 LLC*), 303 F.3d 111, 117 (2d Cir. 2003)). The burden is on the petitioning creditor to establish a *prima facie* case that there is no bona fide dispute as to both liability and amount. *In re TV Azteca, S.A.B. de C.V.*, Case No. 23-10385 (LGB), 2023 WL 8059362, at *5 (Bankr. S.D.N.Y. Nov. 20, 2023) (citing supporting authorities). The petitioning creditor must demonstrate "at the earliest practicable point" that its claim is not subject to a bona fide dispute as to liability or amount. *In re Mountain Dairies, Inc.*, 372 B.R. 623, 630 (Bankr. S.D.N.Y. 2007) (quoting *Key Mech.*, 330 F.3d at 118); 2 COLLIER ¶ 303.11[3] (same).

Involuntary petitions must be filed in good faith, and it is "well-established" that the Court may dismiss an involuntary bankruptcy case filed in bad faith. *In re Abir*, Case No. 07-12877 (ALG), 2007 WL 4556909, at *4 (Bankr. S.D.N.Y. Dec. 20, 2007). "When a Bankruptcy Court suspects an involuntary filing is a sham or is collusive, the Court may make proper inquiry into the circumstances of the filing." *Grossinger*, 268 B.R. at 387 (citing *F.D.I.C. v. Cortez*, 96 F.3d 50 (2d Cir. 1996)). "Filing an involuntary petition for an improper purpose . . . manifests bad faith." *Id.* at 389. As relevant here, an involuntary petition is filed for an improper purpose where:

- the petition is filed by a "friendly" creditor "with no intention of serving the debtor or seeking an order for relief but with the intent of frustrating the rights of a secured creditor or any other creditor whose state court remedies are stayed until the case is closed," *id.* at 387; *see also F.D.I.C.*, 95 F.3d at 51; *Abir*, 2007 WL 4556909, at *4;

- the petitioning creditor seeks redress for "special grievances" held by such creditor, which should be adjudicated "under state law, in the state courts," *Murray*, 900 F.3d at 59-60 (citation and internal quotation marks omitted); *see also Grossinger*, 268 B.R. at 389 (petitioning creditor files an involuntary case in bad faith where he seeks to "obtain a disproportionate advantage to that particular creditor's position") (citation omitted);

- the petitioning creditor uses the bankruptcy case as if it were the creditor's own "collection agency" or as a "rented battlefield." *Murray*, 900 F.3d at 63 (quoting and affirming lower court's ruling); or

- the petitioning creditor uses the involuntary filing as a tactic to "work it out" with the putative debtor. *Grossinger*, 268 B.R. at 388.

"The filing of a bankruptcy petition merely to prevent foreclosure" is an abuse of the Bankruptcy Code. *In re Felberman*, 196 B.R. 678, 681 (Bankr. S.D.N.Y. 1995). The same is true when an involuntary petition is filed merely to prevent foreclosure of the putative debtor's property. *In re 7 Merriewold LLC*, Case No. 26-35163 (KYP), 2026 WL 1781068, at *2, *5 (Bankr. S.D.N.Y. June 26, 2026) (the filing of two unprosecuted involuntary petitions on the eve of foreclosure sales of putative debtor's property was evidence of bad faith collusion between the petitioning creditor and putative debtor).

**2. Farkash and Berlin Have Exhibited a Pattern of Bad Faith**

The majority of Farkash's and Berlin's involuntary petitions were sham filings and/or filed in bad faith. Rather than prosecute the involuntary petitions in good faith for the benefit of the putative debtors' creditors, Farkash and Berlin used numerous tactics to delay progress in the cases. In some cases, the record establishes that Farkash and Berlin acted as "friendly" petitioning creditors filing involuntary petitions to frustrate the legitimate rights of other creditors. In other cases, it appears that Farkash and Berlin used the involuntary petitions to invoke the automatic stay and exert

leverage over the putative debtor or other creditors. Their tactics are described in the sections that follow.

### a. Single-Petitioner Cases and Validity of Petitioner Debts

Farkash's and Berlin's involuntary cases follow a similar pattern. Most of the cases they commence are filed by a single petitioning creditor, *i.e.*, either Farkash or Berlin. This is true for *every* involuntary petition filed by either of them in the SDNY Bankruptcy Court. (*See supra* Chart.) A single petitioning creditor may file an involuntary bankruptcy petition only when the putative debtor has fewer than 12 total creditors. 11 U.S.C. § 303(b)(2). As explained above, a single-petitioner involuntary case must be closely scrutinized because it lends itself to abuse by the petitioning creditor.

In all of their involuntary petitions, Farkash and Berlin listed a debt with scant details and no accompanying documents to validate the debt. Some examples include:

| PETITIONER | ALLEGED DEBT AMOUNT | DESCRIPTION OF DEBT | CITATION |
|---|---|---|---|
| Berlin | $34,000 | "loan" | ECF Fischman Case Doc. # 1 |
| Berlin | $43,700 | "Loans and services for debtor's children" | ECF Toisig Case Doc. # 1 |
| Farkash | $44,000 | "Loan by Confession" | ECF Segal Case Doc. # 1 |
| Berlin | $140,000 | "Loans" | ECF Levin Case Doc. # 1 |
| Farkash | $150,000 | "creditor" | ECF Gratt I Case Doc. # 1 |
| Berlin | $100,000 | "debt" | ECF Gratt II Case Doc. #1 |
| Farkash | $150,000 | "debt" | ECF Gratt II Case Doc. # 1[12] |

[12] The Gratt I and Gratt II Cases were commenced by three petitioning creditors. (*See supra* chart listing all 19 cases.)

In two other cases, Farkash, acting as the sole petitioning creditor, listed a debt that was *below* the statutory minimum of $18,600[13] required to even commence an involuntary case under 11 U.S.C. § 303(b). (*See* ECF Brown Case Doc. # 1 (Farkash's petition listing $12,000 personal loan as basis for involuntary case); ECF Blum Case Doc. # 1 (same).)

It is unclear whether any of the alleged debtors in the single-petitioner cases had fewer than 12 total creditors so that those cases could be maintained by Farkash or Berlin acting alone. As to the majority of the debts that were listed in the petitions, neither Farkash nor Berlin met their *prima facie* burden to show that such debts were not subject to a bona fide dispute as to amount or liability.

**b. Failure to Pay Filing Fee**

Filing fees, including those required to commence involuntary bankruptcy petitions, are due at the time of filing. *See* FED. R. BANKR. P. 1006(a) ("Unless (b) or (c) applies, every petition must be accompanied by the filing fee."); *In re Coburn*, Case Nos. 24-11054-7, 24-10657-7 (CJF), 2024 WL 3466231, at *4 (Bankr. W.D. Wis. July 18, 2024) ("Courts unanimously interpret Fed. R. Bankr. P. 1006(a) to mean that filing fees are due at the same time the petition is filed[.]") (emphasis omitted) (citing supporting authorities). Failure to pay filing fees is grounds for dismissal of an involuntary bankruptcy case. *In re Anderson*, Case No. 3:14-BK-09568 (MFH), 2015 WL 534423, at *2 (Bankr. M.D. Tenn. Feb. 5, 2015).

Farkash and Berlin would often file their involuntary petitions without paying the associated filing fee. Each time, the Court would be forced to schedule a hearing to

[13] This amount was the statutory minimum under 11 U.S.C. § 303(b) when Farkash commenced the Brown and Blum Cases. The statutory minimum was subsequently increased to $21,050 effective April 1, 2025 pursuant to 11 U.S.C. § 104(a).

consider dismissal of the case. Sometimes, Farkash or Berlin would pay the filing fee prior to the hearing date, which resulted in the cancelation of the hearing. Such payment would allow the cases to drag on until the Court entered an order to show cause as discussed in the next section. Other times, the fee would not be paid, and the case would be dismissed. The cases following this pattern include:

| PETITIONER | CASE | FILING DATE | SCHEDULED DISMISSAL HEARING | DATE FEE RECEIVED |
|---|---|---|---|---|
| Farkash | Brown | 9/23/24 | 10/29/24 | 10/28/24 |
| Farkash | Blum | 9/23/24 | 10/29/24 | 10/28/24 |
| Berlin | Toisig | 9/26/24 | 10/29/24 | 10/23/24 |
| Farkash | PBC I | 2/28/25 | 3/27/25 | Not paid |
| Berlin | WPB Holdings | 3/10/25 | 5/6/25 | Not paid |
| Farkash | PBC II | 4/25/25 | 5/20/25 | Not paid |
| Farkash | Laurels of Fallsburg | 8/17/25 | 9/23/25 | 9/19/25 |
| Farkash | 651 Lakes | 8/17/25 | 9/23/25 | 9/19/25 |
| Berlin | MagicSoft | 8/17/25 | 9/23/25 | 9/19/25 |
| Farkash | Segal | 10/30/25 | 12/3/25 | 12/5/25 |

A review of the dockets of Farkash's and Berlin's involuntary cases strongly suggests that the delayed payment, or non-payment, of the filing fees was one of several tactics used to delay the administration of the cases. Additional dilatory tactics are discussed in the sections that follow.

### c. Failure to Prosecute Case

Pursuant to Rules 1010(a) and 7004(e) of the Federal Rules of Bankruptcy Procedure, a petitioning creditor must serve the summons and involuntary petition on the putative debtor within 7 days of issuance of the summons. A timely certificate or affidavit of service evidencing service of the summons and petition was filed in *none* of

the involuntary cases commenced by Farkash and Berlin. In each of these cases, the Court was forced to issue an order to show cause why the case should not be dismissed for failure to prosecute (each, an "OSC") and schedule an OSC hearing.[14] In some cases, a certificate of service would appear on the docket after-the-fact, claiming that the summons and petition were timely-served on a prior date. In others, no affidavit of service would be filed, and the case would be dismissed. The cases following this pattern include:

| PETITIONER | CASE | OSC ENTRY DATE | DATE CERT. OF SERVICE DOCKETED |
|---|---|---:|---|
| Berlin | Fischman | 6/5/23 | No service |
| Farkash | Blum | 2/5/25 | No service |
| Farkash | Laurels of Fallsburg | 10/21/25 | Docketed on 10/31/25 claiming that service was completed on 8/21/25 |
| Farkash | 651 Lakes | 10/21/25 | Docketed on 10/31/25 claiming that service was completed on 8/22/25 |
| Berlin | MagicSoft | 11/3/25 | Docketed on 11/13/25 claiming that service was completed on 10/24/24 (*i.e.*, over 1 year prior to docketing) |
| Farkash | Segal | 3/12/26 | Not docketed, but Farkash asserted that he mailed the certificate of service to the Court on 11/28/25 (*see* ECF Segal Case Doc. # 23)[15] |
| Berlin | Levin | 11/7/24 | No service |
| Farkash and others | Gratt I | 3/27/23 | No service |
| Farkash | 287 New Brunswick | 7/24/23 | No service, but putative debtor consented to entry of order for relief |
| Farkash and Berlin | Gratt II | 3/25/24 | Docketed on 5/6/24 claiming that service was completed on 3/27/24 |

[14] Some cases were dismissed for failure to pay the filing fee before an OSC could be entered.

[15] In several cases, Farkash blamed the tardy docketing of the affidavit of service on his administrative staff or the Court's Clerk's Office. It is hard to believe that Farkash had such difficulty docketing affidavits of service when he has filed all manner of other documents with the Court without issue, including numerous time-sensitive adjournment requests discussed in the next section.

This Court in *Stern*, under virtually identical circumstances, ruled that petitioning creditors' lack of prosecution constitutes bad faith:

> In each of the three involuntary filings initiated by [the petitioning creditors, they] have (1) failed to take any action to advance the petition and (2) failed to serve a summons on the alleged debtor (reflected by the filing of an affidavit of service with the Court) until after the Court issued an order to show cause why the case should not be dismissed.
>
> The purported purpose for filing the involuntary petition is undermined by the [petitioning creditors'] failure to serve a copy of the involuntary petition upon Stern and failure to prosecute the case. Such inactivity gives rise to a powerful inference of bad faith. This inference, and the fact that this is an established pattern of conduct by [the petitioning creditors], manifests the bad faith in filing the instant involuntary petition.

268 B.R. at 394. Likewise, here, Farkash's and Berlin's pattern of failing to prosecute their involuntary petitions is a strong indication of bad faith. It is only after the Court issues an OSC that proof of service, if any, is produced.

The certification of service filed in the MagicSoft Case is highly unusual. Rather than a certification from an individual effectuating service on behalf of the petitioning creditor, the certification was from an individual named Guiselle Montero who purported to be employed by MagicSoft and authorized to receive service of process. (*See* ECF MagicSoft Case Doc. # 10-1.) Aside from the fact that the certification was from the service recipient rather than the process server, it (i) was not signed by Ms. Montero or anybody else, and (ii) stated that Ms. Montero received service of the summons and petition on October 24, 2024, which is a date roughly 10 months *before* the MagicSoft Case was even commenced.

The Court notes too that the person retained by Farkash and Berlin to effectuate service in the Gratt II Case was an individual named Menachem M. Schneorson. (*See*

ECF Gratt II Case Doc. # 14 (certification of service filed by Schneorson).) Roughly two years prior to the Gratt II Case, Berlin (and others) commenced an involuntary bankruptcy against Mr. Schneorson, *i.e.*, the Schneorson Case. The fact that Berlin knew Mr. Schneorson well enough to retain him to be his process server in the Gratt II Case strongly suggests that they previously worked in concert to file the Schneorson Case.

Similarly, the person retained by Farkash to effectuate service in the Laurels of Fallsburg Case and the 651 Lakes Case was an individual named Harry Segal. (*See* ECF Laurels of Fallsburg Case Doc. # 16 (affidavit of service filed by Mr. Segal); ECF 651 Lakes Case Doc. # 8 (same).) Roughly two months after commencing the Laurels of Fallsburg and 651 Lakes Cases, Farkash commenced an involuntary bankruptcy against an individual named Haim Segal, *i.e.*, the Segal Case. "Haim" Segal and "Harry" Segal are the same person. (*See* ECF Segal Case Doc. # 23 at ECF p. 25 (signature page of Florida state court pleading signed by Haim Segal listing his email address as harrysegal@gmail.com).) The fact that Farkash knew Mr. Segal well enough to retain him to be his process server in the Laurels of Fallsburg[16] and 651 Lakes Cases strongly suggests that they worked in concert two months later to file the Segal Case.

**d. Adjournment Requests**

Another delay tactic routinely utilized by Farkash and Berlin was to seek adjournments for important hearings, often on the eve of, or day of, the hearing. The

[16] Mr. Segal stated in his affidavit of service filed in the Laurels of Fallsburg Case that he served the summons and involuntary petition on an individual he personally knows. (ECF Laurels of Fallsburg Case Doc. # 16 ¶ 3 ("I know Joseph Mendelovich personally, and he confirmed to me that he is the owner of LAURELS OF FALLSBURG LLC and is authorized to accept service of legal papers on behalf of the Debtor.").)

frequency with which these adjournments were sought indicates that this was yet another tactic to delay administration of the cases. Farkash and Berlin requested adjournments as follows:

| PARTY SEEKING ADJOURNMENT | CASE(S) | HEARING DATE / MATTER | DATE OF ADJOURNMENT REQUEST |
|---|---|---|---|
| Berlin | Toisig | 1/7/25 – OSC hearing | 1/6/25 |
| Berlin and Farkash | Photo Elec. Case | 4/30/25 – OSC hearing | 4/28/25 |
| Farkash | Laurels of Fallsburg and 651 Lakes | 11/4/25 – OSC hearing | 11/2/25 |
| Berlin | MagicSoft | 11/17/25 – OSC hearing | 11/13/25 |
| Farkash | Laurels of Fallsburg and 651 Lakes | 2/10/26 – Farkash/Berlin sanctions hearing | 2/9/26 |
| Farkash | Segal | 3/11/26 – multiple motions for relief from stay | 3/11/26 |
| Farkash | Gold | 11/19/24 – putative debtor's motion to dismiss | 11/19/24 |
| Farkash | 10 Mountainview | 11/19/24 – putative debtor's motion to dismiss | 11/19/24 |
| Berlin | Levin | 11/26/24 – OSC hearing | 11/22/24 |
| Farkash and Berlin | Gratt II | 4/22/24 – OSC hearing | 4/14/24 |
| Farkash | Gratt II | 11/21/24 – Chapter 7 trustee's motion to dismiss | 11/17/24 |

Seeking adjournments was apparently so common for Berlin that he had a template to send to courts. On November 5, 2025, Berlin and others commenced an adversary proceeding captioned *Berlin, et al. v. Safken, et al.*, Adv. P. No. 25-09019 (KYP) ("MagicSoft Adversary Proceeding"), which was related to the MagicSoft Case. The substance of the MagicSoft Adversary Proceeding is discussed later in this decision, but the important fact for present purposes is that Berlin commenced the action without paying the filing fee. Thus, the Court scheduled a dismissal hearing for November 17, 2025. (ECF MagicSoft Adversary Proceeding Doc. # 5 (notice of dismissal hearing).)

Three days before the hearing, Berlin filed an *Emergency Motion to Adjourn Hearing for Dismissal Due to Inability to Timely Pay Filing Fee* ("Berlin Adjournment Motion") (ECF MagicSoft Adversary Proceeding Doc. # 7). The Berlin Adjournment Motion was clearly an incomplete template he uses for adjournment requests and did not correspond to the scheduled dismissal hearing. The Berlin Adjournment Motion contained unfilled, bracketed items such as:

- Berlin's request to adjourn the "hearing currently scheduled for Friday, [DATE] regarding dismissal," when the dismissal hearing was actually scheduled for Monday, November 17, 2025; and
- Berlin's assertion that notice "of the hearing was received last night, [DATE]."

Berlin's and Farkash's repeated, last-minute adjournment requests of important hearing dates further support the conclusion that one of their main objectives was to impede progress in the involuntary cases.

**e. Involuntary Petitions Filed for Mr. Segal's Benefit**

In 2025, Farkash and Berlin filed the following four involuntary cases:

1. PBC I Case commenced by Farkash on February 28, 2025;
2. WPB Holdings Case commenced by Berlin on March 10, 2025;
3. PBC II Case commenced by Farkash on April 25, 2025; and
4. Segal Case commenced by Farkash on October 30, 2025.

The putative debtors subject to the first three filings were PBC Investments Group LLC and WPB Holdings Group LLC. The putative debtor subject to the fourth

filing was Haim Segal.[17] Mr. Segal apparently owns both PBC Investments Group LLC and WPB Holdings Group LLC.[18]

Unsurprisingly, the first three involuntary cases were completely unprosecuted and were each eventually dismissed for failure to pay the filing fee. However, dismissal did not occur immediately, and Mr. Segal's entities enjoyed the benefit of the Bankruptcy Code's automatic stay for lengthy periods prior to dismissal: (i) the PBC I Case was dismissed 46 days after filing; (ii) the WPB Holdings Case was dismissed 70 days after filing; and (iii) the PBC II Case was dismissed 62 days after filing. This pattern of Farkash and Berlin filing involuntary petitions against Mr. Segal's corporate entities with no intent to prosecute the petitions strongly implies that they filed the cases merely to provide the benefits of the automatic stay to assets owned by Mr. Segal.

A few months following dismissal of the PBC II Case, Farkash filed an involuntary petition against Mr. Segal himself. The Segal Case followed the playbook described above, *i.e.*, a belated payment of the filing fee and delayed submission of an affidavit of service for the involuntary petition and summons on the eve of dismissal hearings. Farkash's behavior in the Segal Case only further supports the conclusion that he and Mr. Segal were acting in concert. When a secured creditor filed a motion for relief from the automatic stay to commence a foreclosure action against Mr. Segal's property based on Mr. Segal's post-petition default of mortgage payments, it was Farkash (not Mr.

---

17 As set forth in the prior section, Farkash retained Mr. Segal to be his process server in the Laurels of Fallsburg and 651 Lakes Cases.

18 *See* FLORIDA DIV. OF CORPS., https://dos.fl.gov/sunbiz/ (click "Search Records" hyperlink; then click "Name" hyperlink; then enter "PBC Investments Group LLC" in the search bar); *id.* (click "Search Records" hyperlink; then click "Name" hyperlink; then enter "WPB Holdings Group LLC" in the search bar). The Court may take judicial notice of documents retrieved from official government websites. *Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 299 n.7 (2d Cir. 2022) (citations omitted).

Segal) who filed a detailed opposition to the secured creditor's motion. (ECF Segal Case Doc. # 12 (Farkash's objection).) Hours before the hearing for the secured creditor's motion, Farkash emailed chambers to seek an adjournment. (*See* ECF Segal Case Doc. # 19 at p. 2 (order containing description of Farkash's adjournment request on morning of scheduled hearing).) At the adjourned hearing, the Court dismissed the Segal Case. (ECF Segal Case Doc. # 27.) The order noted Farkash's acknowledgement at the dismissal hearing that Mr. Segal did not even reside in the Southern District of New York (*id.*), implying that the involuntary case should have never been filed in this District. The Segal Case was pending for 218 days prior to dismissal.

No order for relief granting Farkash's or Berlin's involuntary petitions was entered in any of these four cases. However, Mr. Segal and his corporate entities received the benefit of the Bankruptcy Code's automatic stay for a cumulative period of 396 days because of Farkash and Berlin's actions.

**3. The Instant Involuntary Cases Must be Dismissed**

As stated above, the Court may dismiss an involuntary case that was filed in bad faith. *Abir*, 2007 WL 4556909, at *4. Three cases remain open: the Laurels of Fallsburg and 651 Lakes Cases commenced by Farkash, and the MagicSoft Case commenced by Berlin. Each of these cases was filed on August 17, 2025 with just one petitioning creditor, which is notable because these putative debtors are corporate entities and, in all likelihood, had more than 12 creditors on the petition date. As set forth in the above charts, Farkash and Berlin deployed the usual dilatory tactics in each of these cases, *i.e.*, (i) belated payment of filing fee prior to a scheduled dismissal hearing, (ii) submission of an affidavit of service for the summons and involuntary petition subsequent to the scheduling of an OSC hearing, and (iii) last-minute requests for adjournment. As

explained *supra*, Farkash and Berlin's pattern of delaying case administration is a strong indication that the cases were filed in bad faith. Additional details about the cases further support this conclusion.

**a. Laurels of Fallsburg Case and 651 Lakes Case**

Farkash filed the Laurels of Fallsburg Case to impede a foreclosure action brought by secured creditor Sachem Capital Corp. ("Sachem"). On June 2, 2025, Sachem commenced an action in the Supreme Court of the State of New York, County of Sullivan, against Laurels of Fallsburg LLC and others to foreclose on mortgaged properties located in South Fallsburg, New York. *See Sachem Capital Corp. v. Laurels of Fallsburg LLC, et al.*, Index No. E2025-999 ("Sachem Foreclosure Action"). In late June 2025, Sachem moved in the Sachem Foreclosure Action for the appointment of a temporary receiver and sought judicial intervention. (ECF Sachem Foreclosure Action Doc. ## 20-39.)

Before the state court could rule on Sachem's motion, Farkash filed an involuntary bankruptcy petition against Laurels of Fallsburg LLC. One day after filing the Laurels of Fallsburg Case, Farkash sent Sachem's counsel a document titled "Notice of Bankruptcy Stay" advising that the continuation of the Sachem Foreclosure Action would be a violation of the automatic stay. (*See* ECF Sachem Foreclosure Action Doc. # 42 (Sachem counsel's letter to the state court attaching Farkash's Notice of Bankruptcy Stay).) Sachem then filed a motion for relief from the automatic stay in this Court stating that the loan was in default, and Sachem was owed in excess of $3.6 million. (ECF Laurels of Fallsburg Case Doc. # 7-1.) The Court granted Sachem's motion on November 25, 2025 and entered a corresponding order six days later. (ECF Laurels of Fallsburg Case Doc. # 24.)

Likewise, Farkash filed the 651 Lakes Case to impede a foreclosure action brought by secured creditor Loan Funder LLC, Series 54990 ("Loan Funder"). On March 27, 2025, Loan Funder commenced an action in the Supreme Court of the State of New York, County of Orange, against 651 Lakes LLC and others to foreclose on mortgaged property located in Monroe, New York. *See Loan Funder LLC, Series 54990 v. 651 Lakes LLC, et al.*, Index No. EF002916-2025 ("Loan Funder Foreclosure Action"). In August 2025, Loan Funder filed a motion seeking, among other things, entry of default judgment. (ECF Loan Funder Foreclosure Action Doc. ## 20-35.)

Later the same month, and before the state court could rule on Loan Funder's motion, Farkash filed an involuntary petition against 651 Lakes LLC. As he had done in the Laurels of Fallsburg Case, Farkash sent Loan Funder's counsel a "Notice of Bankruptcy Stay" advising that the continuation of the Loan Funder Foreclosure Action would be a violation of the automatic stay. (ECF Loan Funder Foreclosure Action Doc. # 39 (Loan Funder counsel's letter to the state court attaching Farkash's Notice of Bankruptcy Stay).) Loan Funder then filed a motion for relief from the automatic stay, which this Court granted by order dated December 3, 2025. (ECF 651 Lakes Case Doc. # 15.)

As set forth in the authorities cited above, filing an involuntary bankruptcy petition merely to delay a foreclosure proceeding constitutes an abuse of the bankruptcy system. Farkash performed no action in either the Laurels of Fallsburg Case or 651 Lakes Case to further a legitimate bankruptcy purpose. The only purposeful action he took was to immediately serve "Notices of Bankruptcy" on the secured creditors' counsels. It is unclear whether Farkash filed these cases as a "friendly" petitioning creditor to buy time for the putative debtors or to exert pressure on the secured creditor

in order to extract greater value for his own claims. Ultimately, both rationales constitute bad faith under the authorities cited above because they do not serve the purpose of involuntary bankruptcy: to benefit the entirety of the putative debtor's creditor body.

**b. MagicSoft Case**

Berlin filed the MagicSoft Case to impede progress in two lawsuits filed against MagicSoft Group, Inc. ("MagicSoft") and others including Gabriel Bar Shany, Shani Bar, and Bella Cohen (Mr. Shany, Ms. Bar, and Ms. Cohen are referred to collectively herein as the "MagicSoft Associates"). The two lawsuits, both of which were commenced in the Circuit Court of the Eleventh Judicial Circuit, Miami Dade County, Florida ("Florida State Court"), are:

- *Ahuva Gamliel v. MagicSoft Group, Inc., et al.*, Case No. 2025-004959-CA-01 ("Gamliel Action"), which was commenced on March 20, 2025; and
- *Jennifer Safken and Christopher Safken v. MagicSoft Group, Inc., et al.*, Case No. 2025-004670-CA-01 ("Safken Action"), which was commenced on March 17, 2025.

The allegations in the Gamliel Action and Safken Action are strikingly similar. According to the complaints, MagicSoft purported to operate as a syndicated real estate investment company. Ahuva Gamliel ("Gamliel") alleges that MagicSoft and the MagicSoft Associates fraudulently obtained and retained an $85,000.00 investment she made in April 2024. Likewise, Jennifer and Christopher Safken (together, the "Safkens") allege that MagicSoft and the MagicSoft Associates fraudulently obtained and retained an $85,000.00 investment they made in May 2024.

On August 17, 2025, Berlin – as sole petitioning creditor – filed an involuntary bankruptcy petition against MagicSoft, *i.e.*, the MagicSoft Case.[19] The following day, Berlin filed a "Notice of Bankruptcy Stay" in the Gamliel Action and the Safken Action implying that the continued prosecution of the actions would violate the automatic stay. (ECF Gamliel Action Doc. # 48; ECF Safken Action Doc. # 72.)[20]

On September 22, 2025, Berlin emailed a letter to Gamliel's attorney ("Berlin Cease & Desist Letter").[21] Berlin – who is not an attorney – wrote a letter, which resembled a letter a debtor's lawyer would write to a third party who was violating the automatic stay. (*See generally* Berlin Cease & Desist Letter.) Among other things, Berlin demanded that Gamliel's attorney withdraw a pending motion for default in the Gamliel Action within 3 business days and cease all litigation in the action. (*Id.* at ECF pp. 113-14.) Berlin warned that failure to abide by the demand would result in Berlin filing an adversary proceeding in the MagicSoft Case seeking damages for willful violation of the automatic stay. (*Id.* at ECF pp. 114-15.) The Berlin Cease & Desist Letter attached a copy of a draft adversary proceeding complaint that Berlin threatened to file. (*Id.* at ECF pp. 117-21.)

Later the same day, Gamliel's attorney emailed Berlin back stating that Gamliel was not served with notice of the involuntary bankruptcy. The attorney also noted that the putative debtor listed on the involuntary bankruptcy petition was "MagicSoft Grp,

---

[19] The putative debtor's address listed on the MagicSoft Case involuntary petition is the same as the putative debtor's address listed on the WPB Holdings Case involuntary petition.

[20] The "Notice of Bankruptcy Stay" filed by Berlin in these actions is substantially similar to the notice filed by Farkash in the Sachem Foreclosure Action and Loan Funder Foreclosure Action.

[21] A copy of the Berlin Cease & Desist Letter is available at ECF MagicSoft Adversary Proceeding Doc. # 14-1 at ECF pp. 113-121.)

Inc.," while the defendant in the Gamliel Action was a different entity – "MagicSoft Group Inc."[22]

On September 25, 2025, Berlin emailed Gamliel's attorney and stated the following:

> Mr Joshua.
>
> The spelling of the company as you put in your complaint is different but this company you sued is the company in bankruptcy.
>
> Magicsoft group inc. [doesn't exist][23] and your complaint is demonstrate [sic] that you sued the company who is in bankruptcy.[24]

Despite telling Gamliel's attorney that "MagicSoft Group Inc." is not a real company, Berlin, on September 26, 2025, filed an amended involuntary petition in the MagicSoft Case to change the putative debtor's name from "MagicSoft Grp Inc." to "MagicSoft Group Inc." (*See* ECF MagicSoft Case Doc. # 5 (amended involuntary petition).)

A few months later, a dispute arose in the Gamliel Action about whether the action was stayed by the MagicSoft Case as to the other defendants, *i.e.*, the MagicSoft Associates. The Florida State Court ruled from the bench on November 5, 2025 that the Bankruptcy Code's automatic stay did not stay the continuation of the Gamliel Action against the other defendants.[25]

---

[22] Gamliel's attorney's 9/22/25 email to Berlin is available at ECF MagicSoft Adversary Proceeding Doc. # 14-1 at ECF p. 111.

[23] The actual words Berlin typed were "Isn't exsit"; the Court assumes Berlin meant "doesn't exist."

[24] Berlin's 9/25/25 email to Gamliel's attorney is available at ECF MagicSoft Adversary Proceeding Doc. # 14-1 at ECF p. 111.

[25] A transcript with the Florida State Court's bench ruling is available at ECF MagicSoft Adversary Proceeding Doc. # 14-1 at ECF pp. 124-128.

On the same day as the Florida State Court's bench ruling, Berlin and the MagicSoft Associates commenced an adversary proceeding in this Court against Gamliel, the Safkens, their attorneys, and others seeking damages for alleged willful violations of the automatic stay as well as a host of other causes of actions, *i.e.*, the MagicSoft Adversary Proceeding. (*See* ECF MagicSoft Adversary Proceeding Doc. # 1 (complaint).) The complaint was filed by Berlin (*see id.*) and was a much longer version of the draft complaint he attached to the Berlin Cease & Desist Letter and sent to Gamliel's attorney two months earlier. At the November 17 Hearing, the Court commented that an action *by a petitioning creditor* complaining about purported stay violations affecting third parties that seemingly have no relation to the petitioning creditor is highly unusual and meritless:

> [THE COURT:] . . . I reviewed the complaint in the [MagicSoft Adversary Proceeding] and . . . the petitioning creditor is asking me to find that [Gamliel, the Safkens, and their attorneys] are violating the automatic stay. That's . . . a nonstarter, from a legal perspective. I haven't entered [injunctions under 11 U.S.C. § 105(a)] to cover non-debtor parties in that case, and the petitioning creditor filing a lawsuit . . . for a finding that state court actions are violating the automatic stay . . . is a new one for me.

(11/17/25 Tr. at 6:12-21.)[26]

On February 9, 2026, Berlin and the MagicSoft Associates took two actions in the MagicSoft Adversary Proceeding, which are highly suspicious when viewed together. First, they filed an amended complaint, which excluded Berlin as a plaintiff. (ECF MagicSoft Adversary Proceeding Doc. # 23 (amended complaint).) Then, the MagicSoft

[26] Berlin and the MagicSoft Associates also commenced a civil RICO action on September 26, 2025 against Gamliel, the Safkens, and other seemingly defrauded MagicSoft investors in the United States District Court for the Southern District of New York. *See Shany, et al. v. Tinsley, et al.*, Case No. 25-cv-08040 (LTS). That action was dismissed on October 31, 2025 for failure to pay the filing fee.

Associates filed a notice of voluntary dismissal of the MagicSoft Adversary Proceeding. (ECF MagicSoft Adversary Proceeding Doc. # 24 (notice of voluntary dismissal).) Two days later, the Court entered an order stating, among other things, that, notwithstanding the voluntary dismissal, the Court will retain jurisdiction over the MagicSoft Adversary Proceeding to consider any sanctions motions Gamliel, the Safkens, or their attorneys wish to bring. (ECF MagicSoft Adversary Proceeding Doc. # 31).) Gamliel filed a motion for sanctions against Berlin and the MagicSoft Associates under Federal Bankruptcy Rule 9011 ("Gamliel Rule 9011 Motion") (ECF MagicSoft Adversary Proceeding Doc. # 34), and that motion remains *sub judice*.

Berlin plainly filed the MagicSoft Case in bad faith. None of his actions furthered a legitimate bankruptcy purpose. Instead, all of his actions were intended to protect MagicSoft and the MagicSoft Associates from the Gamliel Action and the Safken Action, including

- filing the MagicSoft Case for the sole purpose of impeding the Gamliel and Safken Actions;
- sending the Berlin Cease & Desist Letter to Gamliel's attorney and threatening a lawsuit for purported violations of the automatic stay;
- filing an amended involuntary petition in the MagicSoft Case in an effort to stay the Gamliel Action; and
- commencing the meritless MagicSoft Adversary Proceeding to impede the continuation of the Gamliel and Safken Actions against the MagicSoft Associates.

Berlin went far beyond acting as a "friendly" petitioning creditor in the MagicSoft Case. He used a pointless involuntary filing, and a bogus adversary proceeding, to actively prevent creditors from asserting their rights against the putative debtor as well

as three individuals associated with the putative debtor. The MagicSoft Case must be dismissed because of Berlin's flagrant bad faith.

## B. Sanctions

### 1. Applicable Legal Standards

"[B]ankruptcy courts, like Article III courts, possess inherent sanctioning powers." *Worms v. Rozhkov* (*In re Markus*), 78 F.4th 554, 564 (2d Cir. 2023) (quoting *Rosellini v. U.S. Bankr. Ct.* (*In re Sanchez*), 941 F.3d 625, 628 (2d Cir. 2019)). "This inherent power is governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *In re Plumeri*, 434 B.R. 315, 328 (S.D.N.Y. 2010) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)) (internal quotation marks omitted). Courts have "an obligation to act to protect the public, adversaries, and judicial resources from litigants and lawyers who show themselves to be serial abusers of the judicial system." *Liebowitz v. Bandshell Artist Mgmnt.*, 6 F.4th 267, 280 (2d Cir. 2021). To impose sanctions under its inherent authority, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, motivated by improper purposes such as harassment or delay." *In re Green*, 422 B.R. 469, 474 (Bankr. S.D.N.Y. 2010) (quoting *Eisemann v. Greene*, 204 F.3d 393, 395-96 (2d Cir. 2000)) (internal quotation marks omitted). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. Courts have the discretion to "fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44-45. "Section 105(a) of the Bankruptcy Code gives the court equitable power to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions

of [the Bankruptcy Code].'" *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.* (*In re Dairy Mart Convenience Stores, Inc.*), 351 F.3d 86, 91-92 (2d Cir. 2003) (quoting 11 U.S.C. § 105(a)) (alteration added). "It also permits the bankruptcy court to take any action 'necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.'" *Buczek v. Nationstar Mortgage LLC* (*In re Buczek*), No. 22-1920-bk, 2023 WL 6618901, at *3 (2d Cir. Oct. 11, 2023) (summary order) (quoting 11 U.S.C. § 105(a)). However, section 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." *Law v. Seigel*, 571 U.S. 415, 421 (2014) (quoting 2 COLLIER ON BANKRUPTCY ¶ 105.01[2], p. 105-06 (16th ed. 2013)).

Section 105(a) empowers a bankruptcy court "to issue a filing injunction so long as it does so in accordance with the bankruptcy code." *Buczek*, 2023 WL 6618901, at *3. Courts consider the following factors when deciding whether to impose a filing injunction:

1. the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits;
2. the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?;
3. whether the litigant is represented by counsel;
4. whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and
5. whether other sanctions would be adequate to protect the courts and other parties.

*Eliahu v. Jewish Agency for Isr.*, 919 F.3d 709, 714 (2d Cir.) (citation omitted), *cert. denied*, 589 U.S. 1016 (2019). "[T]he traditional standards for injunctive relief, *i.e.*, irreparable injury and inadequate remedy at law, do not apply to the issuance of an

injunction against a vexatious litigant." *Martin-Trigona v. Lavien* (*In re Martin-Trigona*), 737 F.2d 1254, 1262 (2d Cir. 1984).

"Where a party's vexatious filings have been limited to a single jurisdiction, there is, without more, ordinarily no cause to impose a filing injunction reaching beyond that jurisdiction." *Woodhouse v. Meta Platforms Inc.*, 704 F. Supp. 3d 502, 517 (S.D.N.Y. 2023) (citing supporting authorities). However, "when a litigant has shown a pattern of abusing different district courts around the country, an injunction which applies to all federal district courts is warranted." *Sassower v. Abrams*, 833 F. Supp. 253, 270 (S.D.N.Y. 1993); *accord Martin-Trigona*, 737 F.2d at 1262 ("We regard the restrictions placed upon Martin-Trigona's bringing of new actions in all federal district courts as necessary and proper."); *see also Woodhouse*, 704 F. Supp. 3d at 517 (Where "a litigant has peppered multiple jurisdictions with vexatious filings – and where such have made substantially the same specious claims against common defendants – the case law supports imposition of a nationwide filing injunction, to reflect the practical reality that only such can effectively guard against the threat of onerous, multiplicitous, and baseless litigation.") (citation and internal quotation marks omitted).

**2. A Five-Year, Nationwide Filing Injunction is Warranted**

Under this Court's inherent sanctioning authority and 11 U.S.C. § 105(a), the issuance of an injunction barring Farkash and Berlin from filing another involuntary bankruptcy petition for a period of five years is warranted. In just the past few years, Farkash and Berlin have engaged in a systematic abuse of the bankruptcy system by filing numerous meritless involuntary bankruptcy cases. As set forth above, Farkash and Berlin filed the majority of these involuntary petitions in bad faith with the intent to delay case administration and/or obstruct the legitimate rights of creditors. In many of

these meritless cases, creditors were forced to appear and incur needless expense to seek relief from the automatic stay or other relief from this Court. These cases have also imposed a tremendous burden on this Court as well as the EDNY and NJ Bankruptcy Courts. In most cases, the Court was forced to schedule dismissal hearings for failure to pay filing fees, issue OSCs for failure to prosecute the involuntary cases, and adjourn important hearings on the eve of such hearings, all before getting to the merits of the cases themselves. Farkash's and Berlin's pattern of repeatedly filing meritless involuntary petitions illustrates that nothing other than a filing injunction will curb their behavior.

"It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). However, "the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented." *Id.* at 102. Berlin and Farkash are entitled to a very low degree of solicitude because they have extensive litigation experience. As set forth above, they have been involved in no fewer than nineteen involuntary bankruptcy cases, several related adversary proceedings, as well as state court actions affected by the automatic stay. Each of them has been involved as *pro se* plaintiffs in at least two civil RICO actions filed in federal district courts.[27] Berlin litigated a nondischargeability adversary proceeding related to his personal bankruptcy case. *See Zaretsky v. Berlin* (*In re Berlin*), 513 B.R. 430, 437 (Bankr. E.D.N.Y. 2014) (ruling that Berlin's actions were "willful and malicious" within

[27] *See Shany, et al. v. Tinsley, et al.*, Case No. 25-cv-08040 (LTS) (S.D.N.Y.) (Berlin was a plaintiff); *Farkash v. Five Star Travel Inc.*, Case No. 18-cv-03699 (ALC) (S.D.N.Y.) (Farkash was a plaintiff); *Farkash, et al. v. Avrom R. Vann, P.C.*, Case No. 17-cv-03352 (JMA) (E.D.N.Y.) (Farkash and Berlin were plaintiffs).

the meaning of 11 U.S.C. § 523(a)(6)). In his response to the instant Motion, Farkash stated that he operates a "legal consulting practice" and has "nearly twenty years of experience managing hundreds of legal matters in rabbinical and civil courts." (Farkash Certification ¶ 3.) Indeed, in reviewing the dockets of their cases, the Court has observed that some of Farkash's and Berlin's submissions contain legal analysis with citation to statutes and other authorities. Thus, Farkash's and Berlin's technical status as *pro se* litigants has little to no effect on the issuance of a filing injunction.

Finally, an injunction barring future filings in this District alone would be insufficient. Farkash's and Berlin's behavior was not limited to this District, and they filed similar baseless involuntary cases in the EDNY Bankruptcy Court and NJ Bankruptcy Court. Since their activities spanned multiple districts, a nationwide injunction is necessary to give proper effect to the sanction.[28] *See, e.g.*, *Davis v. Chaledeeannka Deborah Ann Williams Goyens-Bell Eberwein* (*In re Eberwein*), Adv. P. No. 12-01901 (Bankr. S.D.N.Y.) (SHL), ECF Doc. # 13 (granting summary judgment to the U.S. Trustee and permanently enjoining vexatious litigants from filing another bankruptcy case in any United States Bankruptcy Court).

---

[28] To the extent Farkash and Berlin are actually owed the debts listed in their involuntary petitions, they still retain the ability to assert their rights in state court.

### C. Farkash's and Berlin's Arguments Lack Merit

#### 1. Berlin's Arguments

In the Berlin Submission, Berlin argues that he made no filings in the MagicSoft Case or the MagicSoft Adversary Proceeding. He asserts that someone else assumed his identity and made the filings.[29] This claim is far-fetched.

Berlin points out that the person who filed the MagicSoft Case and MagicSoft Adversary Proceeding was "Aron" Berlin, whereas his name is "Ahron" Berlin. (Berlin Submission ¶¶ 1, 3.) Berlin has a history of using different spellings for his first name. As set forth in the first chart *supra* listing all nineteen cases, Berlin has used, in other involuntary cases, the names "Ahron," "Aaron," "Aharon," and "Ahraon." Given Berlin's history of using different spellings of his name, it is hardly a stretch to assume that "Aron" Berlin is him.

Berlin also points out that the person who filed the MagicSoft Case and MagicSoft Adversary Proceeding resides at 4118 14th Avenue, Brooklyn, NY ("4118 14th Ave."), whereas he resides at 1909 New York Ave., Brooklyn, NY ("1909 New York Ave."). (*Id.* ¶¶ 1, 3; *see also id.* ¶ 4 ("I have no association with [4118 14th Ave.]"). Much like his name, Berlin has used differing addresses in court filings. Despite his claim that he lives in 1909 New York Ave., he has most often stated in his involuntary petitions that he

---

[29] Berlin claims to have only found out about the MagicSoft Case by happenstance:

> I first learned of these matters entirely by coincidence on March 11, 2026, when my friend, Mr. Martinez, an attorney who was in Bankruptcy Court on an unrelated matter, heard my name mentioned and contacted me about them.

(Berlin Submission ¶ 2.) Berlin does not provide Mr. Martinez's first name. As the Bankruptcy Judge who presides over the instant cases at issue including the MagicSoft Case, the undersigned is not familiar with a "Mr. Martinez" who practices in the Poughkeepsie courthouse of this District. The undersigned is the only Bankruptcy Judge who sits in the Poughkeepsie courthouse.

resides at 3 Liska Way, Monroe, NY.[30] Other times, he states that he resides at 1909 New York Ave.[31] Farkash also used multiple addresses in his involuntary petitions including (i) 1909 New York Ave.,[32] (ii) 4118 14th Ave.,[33] and (iii) a third address at 9 Ramsey Terrace, Fair Lawn, New Jersey.[34]

Importantly, Berlin's assertion that he has "no association" with 4118 14th Ave. is false. (Berlin Submission ¶ 4.) In the Schneorson Case, Berlin declared, under penalty of perjury, that his mailing address was 4118 14th Ave. (*See* ECF Schneorson Case Doc. # 2 (involuntary petition filed by Berlin and others).) Berlin's prior use of 4118 14th Ave. in the Schneorson Case undermines his claim that he has had no association with the address.

At bottom, Berlin's claim is simply not credible because the MagicSoft Case followed the same dilatory playbook he deployed in his other involuntary cases. Berlin was the person who actively participated in the MagicSoft Case and the MagicSoft Adversary Proceeding. The arguments made in the Berlin Submission are overruled.[35]

---

30 *See, e.g.*, ECF Gratt II Case Doc. # 1 (involuntary petition dated Feb. 20, 2024); ECF Levin Case Doc. # 1 (involuntary petition dated Oct. 1, 2024); ECF WPB Holdings Case Doc. # 1 (involuntary petition dated Mar. 10, 2025); ECF Toisig Case Doc. # 1 (involuntary petition dated Sept. 26, 2024).

31 *See, e.g.*, ECF Fischman Case Doc. # 1 (involuntary petition dated May 8, 2023). Berlin also used the 1909 New York Ave. address in his personal bankruptcy. *See In re Berlin*, Case No. 8-12-74600 (REG) (Bankr. E.D.N.Y.).

32 *See, e.g.*, ECF Blum Case Doc. # 1 (involuntary petition dated Sept. 23, 2024). In one civil RICO action, Berlin and Farkash stated that they lived together at 1909 New York Ave. *See* Complaint filed in *Farkash, et al. v. Avrom R. Vann, P.C.*, Case No. 17-cv-03352 (JMA) (E.D.N.Y.).

33 *See, e.g.*, ECF Gratt I Case Doc. # 1 (involuntary petition dated Feb. 22, 2023).

34 *See, e.g.*, ECF Laurels of Fallsburg Case Doc. # 1 (involuntary petition dated Aug. 17, 2025).

35 To the extent the Berlin Submission could be characterized as a motion, it is denied in its entirety.

### 2. Farkash's Arguments

Farkash argues that he was denied due process and raises several related points. Each argument lacks merits.

#### a. Service of the Motion

Farkash asserts that he was not served with a copy of the Motion.[36] Under Rules 9014(b) and 7004(b)(1) of the Federal Rules of Bankruptcy Procedure, service of a motion may be completed by "mailing the copy to the individual's dwelling or usual place of abode or where the individual regularly conducts a business or profession." FED. R. BANKR. P. 7004(b)(1). "Rule 7004(b)(1) does not require receipt, only mailing, for service to be effective." *Flores v. Safadi* (*In re Safadi*), 431 B.R. 478, 482 (Bankr. D. Ariz. 2010). "Courts uniformly presume that an addressee receives a properly mailed item when the sender presents proof that it properly addressed, stamped, and deposited the item in the mail." *In re Dana Corp.*, Case No. 06-10354 (BRL), 2007 WL 1577763, at *4 (Bankr. S.D.N.Y. May 30, 2007) (citing supporting authorities). "While the presumption is a rebuttable one, it is a very strong presumption and can only be rebutted by specific facts and not by invoking another presumption and not by a mere affidavit to the contrary." *Id.* Here, the instant Motion is presumed to have been served on Farkash because the U.S. Trustee's affirmation of service filed with the Motion affirmed that a copy of the Motion was mailed to Farkash at his address. (*See* ECF Laurels of Fallsburg Case Doc. # 26-4 (affirmation of service).)

---

[36] Farkash's version of how he found out about the Motion is similar to Berlin's described in *supra* note 29. According to Farkash, a "personal acquaintance who holds a PACER account" brought the Motion to his attention on the evening before the Motion's hearing date. (Farkash Certification ¶ 9.) Farkash does not state the identity of this PACER-account-holding acquaintance nor the circumstances under which such acquaintance was closely reviewing the dockets of these cases on the Sunday evening before the hearing.

Farkash raises two points to rebut the presumption. First, he states that he subscribes to the United States Postal Service's Informed Delivery Program, which provides him with a daily digest containing digitally scanned images of all "letter-sized mail" that are in route to his home. (Farkash Certification ¶ 5.) According to Farkash, his daily digests during the applicable period did not include a scanned copy of an envelope from the U.S. Trustee. (*Id.* ¶ 8.) The U.S. Trustee counters that they did not send the Motion in a "letter-sized envelope." (Reply at 4.) Instead, the Motion was sent in a large 9.5 by 12-inch envelope, which the United States Postal Service does not include in its Informed Delivery Program. (*Id.*; *see also id.*, Ex. A (screen shots from USPS website regarding dimension of letter-sized envelopes).) Thus, a scanned copy of the large envelope from the U.S. Trustee would not have been included in Farkash's daily digests.

Second, Farkash states that he checked his mail daily and never received a copy of the Motion. (Farkash Certification ¶ 7.) But an affidavit stating that a document was not received is insufficient to overcome the presumption of service. *Dana Corp.*, 2007 WL 1577763, at *4.

In any event, Farkash was not prejudiced because the Court granted his last-minute adjournment request in part by entering the Scheduling Order, which allowed him to submit written opposition to the Motion.[37] (*See* Scheduling Order.) Nevertheless, Farkash raises two issues with the Scheduling Order, which are addressed in the next section.

---

[37] Indeed, Farkash timely submitted the Farkash Objection and Farkash Certification, which combined comprised 138 pages of documents.

**b. Scheduling Order**

At the February 10 Hearing, the Court, in response to a last-minute adjournment request, told Farkash that he would be permitted to file a written opposition to the Motion by February 20, 2026. The next day, the Court entered the Scheduling Order, which memorialized the briefing deadlines. Farkash argues that forcing him to respond to the Motion in 10 days violates his due process rights. The argument is meritless. The Motion is governed by Local Bankruptcy Rule 9006-1, which provides that motions not related to discovery or covered by Federal Bankruptcy Rule 2002 shall be served at least 14 days before the return date *with objections due 7 days before the return date*. *See* Bankr. S.D.N.Y. R. 9006-1(c). Thus, under the local rule, Farkash is entitled to 7 days to file an objection, *i.e.*, the period of time between the filing of a motion and the deadline to object. The Court gave Farkash 10 days to file an objection.

Farkash also complains that the Scheduling Order did not schedule another oral argument following the filing of his objection (and the U.S. Trustee' Reply). However, "[t]here is no absolute due process right to an oral hearing." *Forjan v. Leprino Foods, Inc.*, 209 F. App'x 8, 10 (2d. Cir. 2006) (summary order). Whether to permit oral argument is left to the discretion of the trial court. *AD/SAT v. Associated Press*, 181 F.3d 216, 226 (2d Cir. 1999). Here, the Court heard oral argument at the February 10 Hearing and, despite allowing further briefing through the Scheduling Order, declined to schedule a second oral argument. The Court acted within its discretion, and Farkash's due process rights were not violated.

## CONCLUSION

For the reasons stated, the U.S. Trustee's Motion is **GRANTED**. Arguments made by the parties but not specifically addressed herein have been considered by the Court and rejected or rendered moot by the Court's ruling. Counsel for the U.S. Trustee is directed to upload a proposed order ("Sanctions and Injunction Order") to the Court's eOrders system that:

- grants the Motion;
- overrules the objections to the Motion set forth in the Farkash Objection, Farkash Certification, and Berlin Submission;
- attaches a copy of this Memorandum Decision to the Sanctions and Injunction Order;
- dismisses the Laurels of Fallsburg Case, 651 Lakes Case, and MagicSoft Case on the basis that the involuntary petitions were filed in bad faith, but leaves open the MagicSoft Adversary Proceeding pending resolution of the Gamliel Rule 9011 Motion;
- enjoins, pursuant to this Court's inherent sanctioning authority and 11 U.S.C. § 105(a), Farkash and Berlin from engaging in the following activities in any District in the United States for a period of five years from the date of entry of the Sanctions and Injunction Order: (i) filing an involuntary bankruptcy petition; (ii) acting as one of several petitioning creditors in connection with the filing of an involuntary bankruptcy petition; (iii) joining an existing involuntary bankruptcy petition as a petitioning creditor under 11 U.S.C. § 303(c); (iv) replacing an existing petitioning creditor in an involuntary bankruptcy case; or (v) otherwise acting as a petitioning creditor in connection with an involuntary bankruptcy case;
- requires Farkash and Berlin, within 30 days of entry of the Sanctions and Injunction Order, to (i) mail a copy of the Sanctions and Injunction Order to the chambers of every judge presiding over an open bankruptcy case, in which Farkash or Berlin has acted as a petitioning creditor at any point in the case; and (ii) file affidavits of service on the docket of the Laurels of Fallsburg Case evidencing mail service to such judges' chambers;

- states that violations of the Sanctions and Injunction Order by Farkash or Berlin could result in the imposition of civil contempt sanctions under this Court's inherent sanctioning authority as supplemented by 11 U.S.C. § 105;

- directs the U.S. Trustee to mail a copy of the Sanctions and Injunction Order to (i) Farkash at 9 Ramsey Terrace, Fair Lawn, NJ 07410; (ii) Berlin at (x) 4118 14th Avenue, Brooklyn, NY 11219, and (y) 1909 New York Avenue, Brooklyn, NY 11210; and (iii) file a corresponding certificate of service on the docket of the Laurels of Fallsburg Case; and

- directs the Clerk of this Court to send via electronic means a copy of the Sanctions and Injunction Order to the Clerks of Court for every Bankruptcy Court in the United States.

**Dated: August 31, 2026**
**Poughkeepsie, New York**

**/s/ Kyu Y. Paek**
**____________________________**
**Hon. Kyu Y. Paek**
**U.S. Bankruptcy Judge**